UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X  Case No.

JOHN BATES,

                              Plaintiff,        **COMPLAINT**

          -against-

                                                **PLAINTIFF DEMANDS**

UNION SQUARE HOSPITALITY GROUP, LLC, *as well*   **A TRIAL BY JURY**
*as* DYLAN SHIPSEY, LUCY MCGINTY, MEGAN
HENNE and KIMBERLY YU, *Individually*,

                              Defendants.

------------------------------------------------------------------X

Plaintiff JOHN BATES ("Plaintiff"), by and through his attorneys PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendants, upon personal knowledge, as well as information and belief by alleging and averring as follows:

## NATURE OF THE CASE

1. This is the case of the Union Square Hospitality Group, being anything but hospitable when it ostracized and failed to accommodate one of its employees after he was diagnosed with Multiple Sclerosis.

2. Plaintiff brings this action alleging that Defendants have violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 (Pub. L. No. 110-325) ("ADAA"); and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law §§ 296, *et seq.*, the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a), et seq. ("NYCHRL"), and seeks damages to redress the injuries he has suffered as a result of being discriminated against on the basis of his disability (Multiple Sclerosis); and for being retaliated against for requesting a reasonable accommodation.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et seq.*, 29 U.S.C. § 2601, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

6. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 13, 2020; (b) receiving a Notice of Right to Sue from the EEOC on May 21, 2020; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

7. Plaintiff was and is a resident of the State of New York and Kings County.

8. At all times relevant to this action, Defendant UNION SQUARE HOSPITALITY GROUP, LLC ("Union Square") was and is a domestic for-profit corporation, at which Plaintiff was employed.

9. Upon information and belief, Defendant UNION SQUARE HOSPITALITY GROUP employs over 15 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

10. At all times relevant to this action, Defendant UNION SQUARE was and is an "employer" of Plaintiff within the meaning of 29 U.S.C. § 2611(4)(A), 42 U.S.C. § 12111(5), and § 292 of the N.Y. Exec. Law.

11. At all times relevant, Defendant UNION SQUARE knew or perceived/regarded Plaintiff as disabled within the meaning of 42 U.S.C. § 12111 *et seq.* and § 292 of the N.Y. Exec. Law.

12. At all times relevant, Defendant DYLAN SHIPSEY ("SHIPSEY") was the General Manager for Defendant UNION SQUARE.

13. At all times relevant, Defendant SHIPSEY was an employee of Defendant UNION SQUARE.

14. At all times relevant, on information and belief, Defendant SHIPSEY could affect the terms and conditions of Plaintiff's employment.

15. At all times relevant, Defendant SHIPSEY knew or perceived/regarded Plaintiff as disabled within the meaning of § 292 of the N.Y. Exec. Law.

16. At all times relevant, Defendant KIMBERLY YU ("YU") was the Assistant General Manager for Defendant UNION SQUARE.

17. At all times relevant, Defendant YU was an employee of Defendant UNION SQUARE.

18. At all times relevant, on information and belief, Defendant YU could affect the terms and conditions of Plaintiff's employment.

19. At all times relevant, Defendant YU knew or perceived/regarded Plaintiff as disabled

within the meaning of § 292 of the N.Y. Exec. Law.

20. At all times relevant, Defendant LUCY MCGINTY ("MCGINTY") was a Manager for Defendant UNION SQUARE.

21. At all times relevant, Defendant MCGINTY was an employee of Defendant UNION SQUARE.

22. At all times relevant, on information and belief, Defendant MCGINTY could affect the terms and conditions of Plaintiff's employment.

23. At all times relevant, Defendant MCGINTY knew or perceived/regarded Plaintiff as disabled within the meaning of § 292 of the N.Y. Exec. Law.

24. At all times relevant, Defendant MEGHAN HENNE ("HENNE") was a Manager for Defendant UNION SQUARE.

25. At all times relevant, Defendant HENNE was an employee of Defendant UNION SQUARE.

26. At all times relevant, on information and belief, Defendant HENNE could affect the terms and conditions of Plaintiff's employment.

27. At all times relevant, Defendant HENNE knew or perceived/regarded Plaintiff as disabled within the meaning of § 292 of the N.Y. Exec. Law.

## MATERIAL FACTS

28. Plaintiff first became employed by Defendant UNION SQUARE on November 7, 2018, as an Expo/Server Assistant, at a pay rate of $24 an hour. Plaintiff's schedule was approximatively 35 hours per week; accordingly, Plaintiff was earning approximately $44,000 on an annual basis.

29. As a result of his education, training, and experience, Plaintiff was qualified for his position

and diligently performed his duties throughout his employment with Defendant UNION SQUARE.

30. In early February 2019, while at work, Plaintiff began to experience pain, pins and needles, and burning in his legs. This continued until February 14, 2019, when Plaintiff was admitted to NYU Hospital.

31. Plaintiff informed Defendant YU that he was being hospitalized and that he was going to miss work for five days. Defendant YU replied to Plaintiff not to worry, and that his shift would be covered.

32. On or about February 17, 2019, Plaintiff was diagnosed with Multiple Sclerosis. Upon learning of his disability, Plaintiff informed Defendant YU and the entire management staff of his diagnosis.

33. Multiple Sclerosis is a cognizable disability under all applicable statutes as it significantly and chronically impairs Plaintiff's major life activities, *inter alia*, of movement, balance, perambulation, speech and cognition.

34. On or about February 22, 2019, Defendant YU contacted Plaintiff via text. Defendant YU told Plaintiff that it was up to him to decide when to come back to work. On or about February 24, 2019, Plaintiff confirmed he wanted to return to work on February 27, 2019.

35. On or about February 25, 2019, Plaintiff met with Defendant SHIPSEY and MCGINTY and informed them that given his diagnosis he would need an accommodation in the form of shorter shifts to minimize the time he needed to spend on his feet.

36. On or about February 27, 2019, Plaintiff returned to work. Plaintiff was scheduled for a double shift for both lunch and dinner, from 10:30 am to 10:30 pm. Plaintiff informed Defendant YU that he wasn't feeling well and that he was in pain from standing on his feet

for so long.

37. Defendant YU then told Plaintiff that his position was very demanding, asked Plaintiff if this line of work was "right for him," and ultimately said that searching for another job was the best thing to do. Plaintiff expressed to Defendant YU that he was indeed capable of doing his job, but just needed sit-down breaks at least every few hours to rest his legs. Defendant YU responded: "OK."

38. On or about February 28, 2019, Plaintiff was again scheduled for a double shift, for both lunch and dinner. He also did not receive any sit-down breaks. Plaintiff spoke with MCGINTY about being placed on a double shift on his first two days back to work. MCGINTY told Plaintiff there was nothing she could do.

39. In his first two days back to work, Plaintiff was scheduled for two double shifts, for a total of 22 hours without breaks.

40. On or about March 5, 2019, Plaintiff was yet again scheduled to work on a double shift. On or about March 13, 2019, Plaintiff reminded Defendant YU about his need for sit-down breaks as reasonable accommodation. Plaintiff explained how this accommodation was requested by his doctor, and how the failure to accommodate would negatively affect his condition. Defendant YU simply responded that the restaurant was short staffed.

41. On March 20, 2019, during a dinner shift, Defendant YU, who had knowledge of Plaintiff's medical condition, teased Plaintiff's manner of walking and stated: "Now you're not walking correctly?" The comment was overheard by a co-worker which told Plaintiff to go and talk to HR about what happened.

42. Later on, during the same shift, Defendant YU told Plaintiff that "you're going to need to stand straighter, you're slouching."

6

43. On March 29, 2019, Plaintiff again spoke with Defendant YU about his new schedule and his need for reasonable accommodation. Defendant YU again repeated that they were short staffed.

44. On April 5, 2019, the restaurant hosted a special event and was extremely busy. During the event, Defendant SHIPSEY made the following comments about Plaintiff: "come on John, pick up the pace," and "come on! Faster!" Plaintiff perceived these comments as derogatory due to his disability.

45. On April 10, 2019, Plaintiff was scheduled again for another double shift. At this point, Plaintiff's mental and physical health were starting to be affected by the continuous lack of accommodation and continuous time on his feet. Plaintiff complained to Defendant HENNE about Defendant UNION SQUARE's failure to reasonably accommodate him. Defendant HENNE responded "well, I wish I knew this earlier. Well, let me know what you decide." In doing so, Defendant HENNE knowingly supported Defendant UNION SQUARE's disability discrimination against Plaintiff.

46. That day, Plaintiff left work distraught. When Plaintiff arrived home, he sent an email to Defendant YU quitting his employment with Defendant UNION SQUARE. Plaintiff's decision was made due to the continued embarrassment, humiliation and the worsening of his condition due to Defendant's UNION SQUARE's failure to accommodate Plaintiff's disability.

47. On April 11, 2019, a Human Resources representative of Defendant UNION SQUARE, possibly tipped off by one of Plaintiff's colleagues, called Plaintiff, asked if he was OK and asked him to explain why he quit. After Plaintiff explained the mistreatment and discrimination he had suffered, the representative arranged for him to have a meeting with

Kathleen Davin, Senior Benefits Manager, and Sarah Canio, Senior People Operations Manager for Defendant UNION SQUARE.

48. Plaintiff's meeting with Ms. Davin and Ms. Canio occurred on April 18, 2019. During this time, Plaintiff discussed the harassment he faced. The meeting ended with Plaintiff and Defendant UNION SQUARE agreeing that Plaintiff would be rehired and transferred to a different location.

49. Specifically, Defendant UNION SQUARE offered Plaintiff a position as a barista at either the MOMA museum café or the Whitney museum café earning $15 an hour – i.e., $9 less than he earned previously. Plaintiff was told he was going to receive an email with the job offer. Plaintiff was also requested to provide doctor's notes about his disability.

50. On or about April 30, 2019, Plaintiff began his training at the MOMA museum café. To his dismay, however, he was still provided no sitting breaks.

51. On May 6, 2019, Plaintiff wrote to Ms. Devin to give an update regarding his first day at MOMA museum café. Plaintiff highlighted how, again, except for the lunch break, he was not able to take his sitting breaks from when he started his shift until he finished it. Plaintiff reiterated that not having sitting breaks causes him an intense pain in his legs. Plaintiff again requested Defendants to grant his request for reasonable accommodation.

52. On May 17, 2019, Plaintiff and his co-workers were informed that the MOMA museum was due to close on June 16, 2019, due to remodeling. Human Resources informed all employees that they would each be meeting with a manager to discuss potential locations where to be transferred while the museum was closed. Plaintiff discussed with Diana Trenk, a Senior People Operations Manager for Defendant UNION SQUARE, and Delli Santi, a General Manager for Defendant UNION SQUARE, the possibility of moving to a

reception position where he could be seated to reasonably accommodate his disability.

53. From June 1 to June 12, 2019, Plaintiff has asked numerous times about his transfer to a receptionist position, but management still did not provide him with an answer.

54. On June 16, 2019, Plaintiff learned that the register position he was working at, was staying open during the remodeling but that this position was given to another employee.

55. Upon information and belief, very few employees were not reassigned a position upon the closing of the MOMA museum for remodeling.

56. On June 18, 2019, Plaintiff was scheduled to interview for the reception position on June 21, 2019.

57. On June 21, 2019, Plaintiff went to the interview for the reception position. The interview lasted 5 minutes, and Plaintiff was told that the position has already been filled. Plaintiff sent an email to Ms. Trenk to express his disappointment.

58. On June 26, 2019, Ms. Trenk replied to Plaintiff's email stating that the reason the position was filled was because Plaintiff did not apply for the position in a timely manner.

59. On that same day, Plaintiff applied for a driving position with Defendant UNION SQUARE. Whereupon, Plaintiff immediately contacted Ms. Trenk to ask about the position.

60. On July 3, 2019, Plaintiff received a phone call from Sarah Canio, another Senior People Operations Manager. Ms. Canio went over the description of the driver position and explained that the position consisted of a month of *unpaid* training. After the initial training period, Plaintiff would be paid at a rate of $18.00 per hour.

61. Plaintiff was troubled that he was being offered a position that required a full month of unpaid work. As such, that same day, Plaintiff sent an email to Danny Meyer, CEO for

Defendant UNION SQUARE. In this email, Plaintiff complained about the discrimination he was facing.

62. On July 16, 2019, Mr. Meyer replied to Plaintiff's email stating that he had shared Plaintiff's email with Human Resources and also that he was going to get him in contact with the hiring manager for the driving position.

63. On July 18, 2019, Plaintiff had a phone conversation with Dorina (last name unknown) of Human Resources, during which Plaintiff was informed "if you choose not to take the position we are giving you, we would have no choice but to delete you from the system."

64. On July 22, 2019, Plaintiff received an email from Dorina (last name unknown), informing him that he was no longer an employee of Defendant UNION SQUARE.

65. Upon information and belief, Defendants terminated Plaintiff for his reasonable accommodation requests related to his disability and for his complaints of disability discrimination.

66. Defendants knew that Plaintiff's health issues described herein substantially limited his ability to engage in major life activities and therefore constituted disabilities protected by the ADA.

67. Defendants discriminated against Plaintiff based on his disability in violation of the ADA, NYSHRL, and NYCHRL.

68. Plaintiff suffered from disabilities and/or was perceived/regarded as having disabilities by Defendants.

69. But for Plaintiff's disabilities and his complaints of disability discrimination, he would not have been subjected to termination of his employment.

70. Defendants also violated the ADA, NYSHRL, and NYCHRL by failing to engage in the

interactive process regarding Plaintiff's reasonable accommodation request for sitting breaks and a reduced schedule.

71. As a result of the acts and conduct complained of herein, Plaintiff has suffered losses of income, salary, bonus, benefits, and other compensation that such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional distress.

72. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands punitive and liquidated damages.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
## (Not Against Individual Defendants)

73. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

74. Plaintiff claims Defendant UNION SQUARE violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

75. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

76. As discussed above, Defendant UNION SQUARE engaged in an unlawful employment practice by discriminating against Plaintiff because of his disability.

77. Defendant UNION SQUARE violated this section as set forth herein by, on the basis of

11

Plaintiff's disability, alterning the terms and conditions of Plaintiff's employment and failing to hire Plaintiff for the multiple positions for which he applied.

78. Accordingly, as a result of Defendant UNION SQUARE's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
## (Not Against Individual Defendants)

79. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

80. As discussed above, Defendant UNION SQUARE engaged in an unlawful employment practice by retaliating against Plaintiff, through terminating his employment in response to Plaintiff opposing Defendant UNION SQUARE's violations of the ADA.

81. The ADA prohibits retaliation.

82. 42 U.S.C. § 12203 provides:

> a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

83. Defendant UNION SQUARE violated this section as set forth herein by, among other things, wrongfully terminating Plaintiff's employment in response to Plaintiff's opposition to Defendant UNION SQUARE's violations of practices that violate the ADA.

84. Accordingly, as a result of Defendant UNION SQUARE's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## THIRD CAUSE OF ACTION
## INTERFERENCE UNDER THE AMERICANS WITH DISABILITIES ACT
## (Not Against Individual Defendants)

85. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

86. As discussed above, Defendant UNION SQUARE engaged in an unlawful employment practice by interfering Plaintiff's enjoyment of rights protected by the ADA.

87. The ADA prohibits interference, coercion, or intimidation.

88. 42 U.S.C. § 12203 provides:

> b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or his having exercised or enjoyed, or on account of his or his having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

89. Defendant UNION SQUARE violated this section as set forth herein by unlawfully denying Plaintiff a reasonable accommodation and failing to engage in any form of interactive process to address Plaintiff's reasonable accommodation request.

90. Accordingly, as a result of Defendant UNION SQUARE's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
## (Against All Defendants)

91. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

92. The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed,

color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. Defendants engaged in an unlawful employment practice in violation of the New York State Executive Law § 296(1)(a) by denying Plaintiff's reasonably accommodate request, failing to engage in the interactive process regarding Plaintiff's reasonable accommodation request, alterning the terms and coditions of Plaintiff's employment, and ultimately terminating Plaintiff's employment because of his disability.

94. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## FIFTH CAUSE OF ACTION
## RETALIATION UNDER THE NEW YORK STATE EXECUTIVE LAW
## (Against All Defendants)

95. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

96. New York State Executive Law § 296(7) provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

97. Defendants have engaged in an unlawful employment practice by retaliating against Plaintiff through, among otherthings, terminating Plaintiff's employment in response to his opposition of practices that violate New York State Executive Law § 296.

98. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

### SIXTH CAUSE OF ACTION
### AIDING AND ABETTING UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against Individual Defendants Only)

99. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

100. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

101. Defendants SHIPSY, YU, MCGINTY, and HENNE engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296 by aiding, abetting, inciting, compelling, and coercing the discriminatory and retaliatory conduct complained of herein.

102. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

### SEVENTH CAUSE OF ACTION
### DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

104. The New York City Administrative Code §8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment.

105. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by altering the terms and conditions of Plaintiff's employment and affecting Plaintiff's compenasation because of his disability.

106. As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that she was denied due to his disability; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

107. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

### EIGHTH CAUSE OF ACTION
### RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

110. Defendants violated the section cited herein as set forth.

111. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## NINTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against Individual Defendant Only)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

113. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

114. Defendants SHIPSY, YU, MCGINTY, and HENNE engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct against Plaintiff.

115. Accordingly, as a result of the unlawful conduct of Defendants SHIPSY, YU, MCGINTY, and HENNE, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## JURY DEMAND

116. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a), et seq.; by discriminating against Plaintiff on the basis of his disabilities, denying his reasonable requests for an accommodation, and unlawfully retaliating against him;

17

B.     Awarding damages to the Plaintiff, for all lost wages and benefits resulting from Defendants' discrimination in employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff liquidated damages;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
          August 12, 2020

                                             **PHILLIPS & ASSOCIATES,**
                                             **ATTORNEYS AT LAW, PLLC**

                            By: _/s/ Alfredo Pelicci_____
                                  Alfredo J. Pelicci

                                  *Attorneys for Plaintiff*
                                  45 Broadway, Suite 430
                                  New York, New York 10006
                                  (212) 248-7431
                                  Apelicci@tpglaws.com